IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CV-145-FL

| | |
|---|---|
| KIMBERLY KATHERINE KINCAID, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM** |
| v. ) | **AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the cross-motions of the parties for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P. Kimberly Katherine Kincaid ("Claimant") filed this action seeking judicial review of the denial of her application for supplemental security income ("SSI"). The time for filing responses to the pending motions has expired and the matters are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda of the parties, the court recommends that Claimant's motion for judgment on the pleadings be denied, defendant's motion for judgment on the pleadings be granted, and the final decision of the Commissioner be upheld.

## STATEMENT OF THE CASE

On April 22, 2005, Claimant protectively filed an application for SSI alleging disability beginning February 1, 2002. Claimant's application was denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 28, 2006, at which she was represented by counsel and testimony was elicited from a vocational expert ("VE"). The ALJ issued a decision denying Claimant's claims on February 22, 2007. The Appeals Council denied Claimant's request for review on July 11,

2007, rendering the ALJ's decision a "final determination" for purposes of judicial review. Claimant has timely commenced the present action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "Ultimately, it is the duty of the administrative law judge reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Even if this court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. *Id.* In conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform his past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.* The Commissioner often attempts to carry its burden through the testimony of a vocational expert ("VE"), who testifies as to the availability of jobs based on the characteristics of the claimant.

In the present case, Claimant contends that the ALJ erred in his credibility assessment of Claimant regarding the impact of Claimant's overall condition on her ability to work. Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings at 3-6 (hereafter "Pl.'s Mem.").

## STATEMENT OF THE FACTS

### I. The Findings by the ALJ

In making the decision in this case, the ALJ proceeded through the five-step evaluation process set forth in 20 C.F.R. § 416.920, and found that Claimant had not engaged in any

3

substantial gainful activity at any time relevant to the ALJ's decision. (R.16). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. The ALJ found that Claimant suffered from the following severe impairments: fibromyalgia, osteoarthritis of the knees and lumbar degenerative disc disease. *Id.* At step three, the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (R.17). Next, the ALJ determined Claimant's RFC by considering all of her subjective complaints and the entire medical record. (R.17-21). At step four, the ALJ explained that Claimant had no past relevant work and that she was capable of performing a limited range of light work. *Id.* At step five, after considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant could perform work as an unarmed security guard and cashier at the unskilled light exertional level, and a surveillance systems monitor and order clerk at a sedentary exertional level.[1] (R.21-22). As a result, the ALJ found that Claimant was neither disabled nor entitled to benefits under the Act. (R.22).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

## II. Testimony at the Administrative Hearing

Claimant testified at the administrative hearing.[2] (R.254-68). At the time of the hearing, Claimant was forty-nine years old and resided with her husband. (R.254, 255, 264). Claimant testified that she had completed a portion of the eleventh grade and that she does not have a high school equivalency degree ("GED"), nor has Claimant taken any specialized occupational training classes. (R.254, 268). Claimant was last employed in 1990 as a temporary part-time companion sitter. (R.255, 268).

Claimant testified that she performs light cooking, making her own meals and occasionally making meals for her husband. (R.255, 264). She performs light housekeeping work, using the vacuum cleaner, washing dishes and cleaning the laundry, although she does not lift heavy items. (R.255, 256, 264). Claimant testified to handling the family bookkeeping, including writing checks and paying bills. (R.256).

According to Claimant, the primary condition that keeps her from working is continuous pain, lack of focus and concentration, and fatigue. *Id.* She attributes these problems to fibromyalgia and arthritis. (R.256-57). Discussing her symptoms further, Claimant said that she experiences headaches continuously, ranging from moderate to severe in intensity. (R.257). Claimant testified to experiencing pain in her neck, back and joints, as well having memory loss and difficulty concentrating. (R.257-58). Claimant testified that she has advanced osteoarthritis and that her right knee is swollen. (R.258). She stated further that she has problems with her ankles and feet in that they hurt all the time and that she experiences numbness and muscle

---

[2] The administrative hearing held on September 19, 2006 was continued so that Claimant could retain counsel. (R.248-49). A second hearing was held on November 28, 2006, the record of which makes up Claimant's appeal before this court. (R.250).

spasms in her extremities. *Id.* Claimant testified further that she has difficulty sleeping due to insomnia and cramping. (R.260). Claimant said that she feels pain when she walks and that she is unable to walk long distances. (R.261). She described the intensity of the pain as varied, and stated that she has pain and stiffness after walking, requiring her to rest and stay off of her feet. *Id.*

Claimant testified that she feels strain in her back and weakness when she lifts weight between approximately ten to twenty-five pounds, and said that she may be able to lift this weight twice daily. (R.262). Claimant is able to sit but has difficulty getting up from a seated position because her back will stiffen. (R.262). She said that on some days she needs assistance getting dressed and showering because she does not have complete mobility. *Id.* Claimant can sometimes bend from the waist but can no longer squat or kneel. (R.262-63). Regarding her concentration, Claimant testified that after reading a newspaper she sometimes forgets what she has read; however, she can follow a television program. (R.263). Claimant testified that she suffers from anxiety which affects her ability to be organized. *Id.*

Describing her typical day, Claimant said she takes pain medication when she wakes up in order to be able to get out of bed. (R.264). She spends the day unpacking moving boxes and doing housework, resting intermittently for varying periods of time. (R.266-67).

Claimant testified further that she had recently seen Dr. Kona, an orthopedic surgeon, because of a fall she had sustained a few months prior to the hearing. (R.267). She said that the fall aggravated her knee condition. *Id.* Dr. Kona prescribed cortisone for her knees and referred

her to a rheumatologist.[3] According to Claimant her lack of financial resources prevented her from seeing other physicians. (R.267-68).

Claimant's husband, Greg Hinton, testified at the administrative hearing. (R.268-71). Hinton testified that his wife's housecleaning abilities were limited to non-strenuous tasks. (R.269). According to Hinton, Claimant is able to wash dishes for a short period of time and can vacuum. *Id.* Claimant does not perform any yard work or wash windows. *Id.* Hinton testified that Claimant can prepare meals but not while standing longer than fifteen to twenty minutes. *Id.* Hinton said that Claimant has difficulty concentrating but that she can pay bills. (R.270). Hinton testified further that Claimant sits on the couch or lays in bed periodically during the day. (R.270-71).

## III. Testimony of the Vocational Expert

Edith Edwards, M.S., Rehabilitation Administration and Services, and Certified Rehabilitation Counselor, was called to testify as a VE at the administrative hearing. Claimant's counsel did not object to her testimony and stipulated that Edwards is an expert in vocational assessment. (R.271). The ALJ asked the VE whether jobs exist in the national economy for an individual with Claimant's age, education, work experience, and RFC. Specifically, the ALJ posed the following hypothetical question to the VE:

> Ms. Edwards, I would ask if you would consider a hypothetical individual, let's assume this is a younger individual with a limited education and no past relevant work. We would assume this individual could perform a range of light work, that would not involve the use of foot or leg controls and where there would be only

---

[3] At the time of the hearing Claimant had not yet seen her rheumatologist and the ALJ held open the administrative record for thirty days in order for Claimant to submit medical records from this physician. (R.253, 274). The record remained open fifty days, until January 17, 2007, but no additional records were submitted for the ALJ's consideration. (R.14).

7

occasional stooping, kneeling, crouching, balancing, climbing or crawling. And I'm using the term occasional as it's defined in the Dictionary of Occupational Titles as well as the term light.. . . Would there be jobs such an individual could perform and if so, unskilled jobs, and if so could you give us some examples.

(R.272).

The VE testified that the hypothetical individual would be able to perform the requirements of representative jobs. Specifically, the VE testified that examples of available positions at the light level that meet the hypothetical include an unarmed security guard (3,000 in North Carlina, 100,000 nationally), and a cashier (5,250 in North Carolina; 175,000 nationally). *Id.* The VE testified that at the sedentary level examples of available positions included a surveillance system monitor (2,500 in North Carolina; 83,300 nationally) and an order clerk (3,180 in North Carolina, 106,000 nationally). (R.272-73). The VE testified further that the description of these positions was consistent with the DOT. (R.273). The VE noted one exception related to the unarmed security guard position. The VE testified that while the DOT lists this position at the light level, it is listed at a low and unskilled level, with an SVP of three, and that based on her twenty-year experience of vocational placement, this position is an unskilled position. *Id.* The VE testified further that an individual must be able to work eight hours a day for forty hours to perform these jobs, and be able to maintain concentration to perform simple tasks. *Id.*

On examination by Claimant's counsel, the VE testified that if Claimant's testimony regarding her need for rest were found to be credible, Claimant would not be able to meet the job requirements of the jobs described and that no work would be available for Claimant. *Id.*

8

## IV. Analysis of Claimant's Argument

### A. The ALJ did not err in his assessment of Claimant's credibility.

Claimant argues that substantial evidence does not support the ALJ's findings that Claimant's allegations of pain and functional restrictions are not credible. Pl.'s Mem. at 3-6. Specifically, Claimant argues that given her testimony and that of her husband, together with her severe and non-severe impairments, any reasonable interpretation of the facts supports her claim. *Id.* at 5. This Court finds, however, that the ALJ's evaluation of Claimant's credibility is supported by substantial evidence.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. § 416.929(c)(1); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. § 416.929(c)(4); SSR 96-7p, 1996 WL 374186, at *4. A claimant's subjective allegations alone will not support a finding of disability. *Craig*, 76 F.3d at 592 ("subjective evidence. . . cannot take precedence over objective medical evidence or lack thereof.") (citations omitted). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 416.929(c)(4). The Social Security regulations require that an ALJ's decision "contain specific

9

reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005). In addition to the objective medical evidence, the ALJ's evaluation of Claimant's credibility must include the following factors:

(1) effect of symptoms on claimant's daily activities
(2) location, duration, frequency and intensity of the symptom(s)
(3) factors that precipitate or aggravate claimant's symptoms
(4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5) non-medical treatment received for relief of the symptom(s)
(6) any non-treatment measures used to relieve the symptom(s)
(7) other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. § 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (explaining that an ALJ's observations regarding credibility should be given great weight); *see also Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) ("sufficient consideration of the combined effects of a [claimant's] impairments is shown when each impairment is separately discussed in the ALJ's decision, including discussion of [claimant's] complaints of pain and level of daily activities.") (citations omitted), *aff'd*, 179 Fed. Appx. 167 (4th Cir. May 5, 2006) (unpublished per curiam).

The ALJ has provided specific reasons for his credibility findings based on evidence

10

contained in the administrative record. (R.16-21). As set forth in his decision, the ALJ determined

> [a]fter considering the evidence of record, . . .[that] claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, in light of the medical findings, statements of treating and examining sources regarding the nature and severity of her impairments, her lack of significant medical treatment, her ability to engage in significant activities of daily living and evidence of drug seeking behavior.

(R.19).

The ALJ has reviewed thoroughly the medical reports documenting Claimant's impairments as well as her non-impairments about which she complains. (R.14-20). Among his findings, the ALJ noted Claimant's full range and significant range of motion in her lower and upper extremities and normal strength and reflexes as reported by her physicians. (R.166, 167, 195, 216). Regarding Claimant's reports of pain, Dr. Philpot reported that Claimant had a full range of motion despite her diagnoses, and that Claimant in fact demonstrated exaggerated pain responses. (R.164). Moreover, Claimant's gait was repeatedly described as normal despite Claimant's alleged difficulty in walking, and her lower and upper extremities were evaluated as having normal strength and no sensory or motor deficits. (R.134, 136, 139, 154, 167, 194, 196, 216, 238). As cited by the ALJ, Dr. Land noted Claimant had difficulty articulating the type of pain she was experiencing other than stating that she had generalized pain. (R.215). He reported further that Claimant is independent in her self care and uses no assistance devices. (R.215). Claimant's other physicians also found that she did not need devices to assist in ambulation. (R.167), nor did she report any need for such assistance. (R.117). Dr. Land indicated further that

11

Claimant's gait was normal and that she was able to sit in a chair and put on her shoes without assistance. (R.216). While Dr. Cerveny corroborated the Fibromyalgia and right knee arthritis diagnoses, she found Claimant's left knee to be normal. (R.238). Dr. Cerveny indicated however that Claimant declined any further therapy, including participation in a pain clinic, and that in fact she tolerated her symptoms well. (R.238). Consistent with her medical history, State Agency physician Dr. Bertran Haywood confirmed Claimant's diagnosis of muscle pain and Fibromyalgia, but found her gait and muscle strength to be normal. (R.226, 227).

Regarding Claimant's complaints of a lack of concentration and memory loss, her husband testified that such problems, if any, were minimal. (R.98, 269). Claimant was assessed by her physicians as alert and oriented. (R.164, 167, 196, 202, 203). Moreover, as cited by the ALJ, Claimant has no difficulties paying attention nor does she need assistance in following instructions. (R.95, 97, 98, 116).

The administrative record indicates Claimant is more engaged in her daily activities than suggested by her hearing testimony, and provides further support for the ALJ's credibility finding. In particular, Claimant prepares meals on a daily basis and performs light housekeeping including dusting, dishwashing, vacuuming and laundry, and occasional grocery shopping. (R.93, 95, 113, 114). Claimant is responsible for the family finances, paying bills and handling the family's bank accounts. (R.96, 114). Claimant remains engaged socially as she visits her daughter and grandson on a weekly basis. (R.97, 115). Claimant's hobbies include reading and Claimant's husband indicates that Claimant reads frequently. (R.97). The records also reveal that Claimant is capable of caring for herself without assistance or instructions, (R.112), and that she can pay attention without difficulty and can follow instructions. (R.98, 115, 116, 117).

12

In addition to the objective medical evidence, the ALJ considered the factors set forth in 20 C.F.R. § 416.929(c)(3) as referenced above, setting out each of these prominently within the decision. (R.18); *see* SSR 96-7p, 1996 WL 374186, at *6. In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) the extensive range of Claimant's daily activities described above as indicated in her administrative questionnaire and that of her husband (R.20, 93, 95,113, 114)[4], (2) the duration, frequency location and intensity of Claimant's low back and knee pain, osteoarthritis, muscle spasms, and "charley horses" (R.19, 20), (3) Claimant's excessive use of medication and the absence of side effects (R.20, 240, 242, 260), (4) despite complaints, Claimant's decision to decline therapy and pain treatment, and toleration of her symptoms (R.20, 238), (5) the lack of need for assistance devices (R.20, 99, 117, 167, 215), and (6) evidence of drug-seeking behavior (R.19, 139, 158, 161).

A reasoning mind would accept the evidence cited above as sufficient to support the conclusion reached by the ALJ. The fact that Claimant may point out other evidence in the record that may support her claimed impairments does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve the inconsistencies. *Hays*, 907 F.2d at 1456. It is not the responsibility of this court to determine the weight of the evidence. *Id.* Here, the ALJ has pointed to evidence in the record to support his conclusion that the Claimant was not credible. Therefore, he has satisfied his duty under applicable regulation and law. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security

---

[4]This court notes that Exhibit 6E, included among the exhibits cited in the decision, refers to a disability claimant other than the one before this court. (R.103-10). Because the information contained in Exhibit 6E does not appear to be relied upon in the ALJ's narrative, it has no effect on the ALJ's ultimate decision which, for the reasons set forth above, is found to be supported by substantial evidence.

Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument is without merit.

## CONCLUSION

Accordingly, this court finds that there is substantial evidence within the record to support the findings of the ALJ. For this reason, this Court RECOMMENDS that Claimant's motion for judgment on the pleadings be DENIED, that defendant's motion for judgment on the pleadings be GRANTED, and that the decision of the ALJ be upheld. The Clerk shall serve copies of this Memorandum and Recommendation upon counsel for the respective parties. The parties have ten (10) days after being served with this Memorandum and Recommendation to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a *de novo* review by the district court on an issue covered in this Memorandum and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.

This, the 2nd day of July, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge